**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| In re:   Michael A. Guglielmo | | Case No.: 22-10461-BAH |
| | | Chapter 13 |
| Debtor(s) | | |
| | | |
| Christina Snarksi | | Adv. No.: 23- |
| f/k/a Christina Poulicakos | | |
| Plaintiff | | |
| v. | | |
| Michael A. Guglielmo | | |
| Defendant | | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**
**PURSUANT TO 11 U.S.C. §523(A)(4)**

**NOW COMES** The Creditor and Plaintiff in the above-captioned matter, Christina Snarski, f/k/a/ Christina Poulicakos, by and through her Attorneys, Raymond J. DiLucci, P.A. and Complains against the Debtor and Defendant, Michael A. Guglielmo for a determination that a portion of the debt owed to her be deemed non-dischargeable pursuant to 11 U.S.C. §523(a)(4) and in support thereof states:

**I. Jurisdiction**

1. That this Honorable Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.A. §1334(b) and §157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire", dated January 18, 1994 (DiClerico, C.J.).

2. That this matter is a Core Proceeding pursuant to 28 U.S.C.A. §157(b)(2)(I).

3. That this is an Adversarial Action pursuant to Bankruptcy Rule 7001.

4. That this matter is an action to determine the dischargeability of debt pursuant to 11 U.S.C. §523(a)(4).

5. That pursuant to Fed. R. Bankr. P. 7008(a) the Plaintiff states that she consents to the entry of Final Orders and/or Judgments in this matter by this Honorable Court.

## II. Parties

6. That the Plaintiff repeats and incorporates the allegations contained in paragraphs 1 through 5 above.

7. That the Plaintiff, Christina Snarski, f/k/a Christina Poulicakos ("Snarski") is an individual whose mailing address is 164 Abbott Rd., Concord, NH.

8. That the Defendant, Michael A. Guglielmo, "Guglielmo" is an individual whose mailing address is 140 Rumford St., Apartment 3, Concord, NH 03301.

## III. Background

9. That the Plaintiff repeats and incorporates the allegations contained in paragraphs 1 through 8 above.

10. That on or about January 12, 2007, Snarski and Guglielmo jointly purchased real estate located at 134 Park Street, Northfield, NH ("Park St."). Snarski and Guglielmo took title to Park St. as "tenants in common". (Exhibit A).

11. That Snarski and Guglielmo paid Three-Hundred Thirty-Four Thousand ($334,000.00) to purchase Park St.

12. That the purchase price of Park St. was paid with a combination of a down payment in the amount of Thirty-Four Thousand ($34,000.00) ("the down payment") and a loan ("the loan"). (Exhibit B).

13. That the loan was secured by a mortgage for Three-Hundred Thousand ($300,000.00) dollars ("the mortgage"). (Exhibit C).

14. That Guglielmo paid the down payment solely from his own personal funds. (Exhibit B).

15. That the loan was obtained solely in Snarksi's name. (Exhibit B).

16. That the mortgage was granted jointly by Snarski and Guglielmo. (Exhibit C).

17. That since at least 2009, Park St. has been a four (4) unit residential rental property generating three-thousand four hundred ($3,400.00) rent per month, when fully rented. (Exhibit B & Bankruptcy Doc. 1 Page 45, Line 8h).

18. That on or about March 21, 2009, Snarski and Guglielmo entered into an agreement with a Ms. Anna Hantschar ("Hantschar") regarding Park St. ("2009 Agreement"). (Exhibit B).

19. That pursuant to the 2009 Agreement, Hantschar would invest One-Hundred Sixty-Seven Thousand ($167,000.00) dollars into Park St., which sum represented one-half (1/2) the original purchase price for a one-half (1/2) ownership interest in Park St. (Exhibit B).

20. That Hantschar paid the One-Hundred Sixty-Seven Thousand ($167,000.00) dollars to Guglielmo.

21. That pursuant to the 2009 Agreement Snarski and Guglielmo executed a QuitClaim Deed on July 9, 2013. The QuitClaim Deed was recorded at the Merrimack County Registry of Deeds on July 11, 2013 at Book 3397, Page 1456. (Exhibit D).

22. That contrary to the 2009 Agreement, where the parties agreed Hantschar investment was to be in exchange for a one-half (1/2) interest in Park St., the QuitClaim Deed provides that Snarski, Guglielmo, and Hantschar each own a one-third (1/3) interest in Park St. (Exhibits B & D).

23. That pursuant to the 2009 Agreement, the monthly payment on the mortgage was Two-Thousand, Eight-Hundred Twenty-Two dollars and nineteen cents ($2,822.19) per month, which amount included escrow. The then outstanding principal balance of the loan was Two-Hundred Ninety-Four Thousand, Nine-Hundred Seventy-Eight dollars and eight cents ($294,978.08), and the interest rate was eight and two-tenths (8.2%) percent. (Exhibit B).

24. That pursuant to the 2009 Agreement, there was a "Park Street account", which all parties to the 2009 agreement had access to, held at Citizens Bank. (Exhibit B).

25. That pursuant to the 2009 Agreement, Snarski was to be responsible for collecting the monthly rents from the Park St. tenants and depositing the rents into the Park Street account. (Exhibit B).

26. That pursuant to the 2009 Agreement, "bi-weekly" payments were to be made from the Park Street account at Citizens Bank to the mortgage. (Exhibit B).

27. That in 2015 the working relationship between Guglielmo and Snarski deteriorated and Guglielmo removed Snarski's access to the Park Street Account at Citizen's Bank.

28. That in 2015, Guglielmo instructed the tenants of Park St. to pay their monthly rent solely to him.

29. That in 2018, Guglielmo requested Snarski's cooperation in modifying the mortgage on Park St., as the loan is solely in Snarski's name the mortgage company would not permit Guglielmo to modify the loan without her consent and cooperation.

30. That in 2018, Snarski agreed to cooperate in the modification requested by Guglielmo and the loan was ultimately modified.

31. That due to an error caused by the loan's then servicer, Seterus, one or more mortgage payments were not timely withdrawn from the Park Street account at Citizen's Bank. The Mortgagee scheduled a foreclosure sale of Park St. because of the delinquency. Guglielmo filed a Petition to Enjoin Foreclosure, which resulted in a State Court Order requiring Guglielmo to pay the delinquent mortgage payments, for the foreclosure sale to be enjoined, and Guglielmo and Seterus agreed to each pay their own costs associated with the petition to enjoin.

32. That upon information and belief the Park St. account at Citizen's Bank is no longer an open account.

33. That on or about September 21, 2022, Guglielmo filed a Voluntary Chapter 13 Bankruptcy Petition with the Bankruptcy Court for the District of New Hampshire and received Case Number 22-10461-BAH.

### IV. Facts

34. That the Plaintiff repeats and incorporates the allegations contained in paragraphs 1 through 33 above.

35. That in early, 2020, due to COVID-19 and consistent with the provisions of the "CARES Act", Guglielmo contacted Seterus, the then servicer of the mortgage, and obtained a ninety (90) day forbearance on the Part St. mortgage payments.

36. That during the initial "CARES Act" Forbearance, Park St. was fully rented.

37. That during the initial "CARES Act" Forbearance, Guglielmo continued to collect at least Two-Thousand Five Hundred ($2,500.00) dollars per month in rent from three (3) of the four (4) Park St. tenants.

38. That Guglielmo notified the fourth (4th) tenant, who was not paying his/her/their rent during the initial "CARES Act" forbearance, that he/she/they would be evicted once the then existing "Covid eviction moratorium" was lifted if the rent was not brought current.

39. That upon information and belief the fourth (4th) tenant did pay Guglielmo the unpaid rent to avoid eviction once the "COVID eviction moratorium was lifted.

40. That on or about July 9, 2020, Guglielmo contacted Mr. Cooper to extend the initial "CARES Act" forbearance; however, Snarski had notified Mr. Cooper that a "CARES Act" forbearance was not necessary for the loan, and Mr. Cooper declined to extend Guglielmo a further forbearance.

41. That upon information and belief Guglielmo has collected rent totaling Three-Thousand Four Hundred ($3,400.00) per month from the Park St. Tenants since March 2020.

42. That Mr. Cooper is the current servicer of the loan.

43. That the last full payment on the mortgage was received by the servicer on or about February 14, 2020.

44. That as of September 20, 2022, the mortgage payment arrearages owed to Mr. Cooper were $85,795.31.

45. That as of September 20, 2022, the amount necessary to bring the mortgage payments current was $94,730.63.

46. That as of September 20, 2022, the accelerated amount owed to Mr. Cooper was $380,434.97.

47. That upon information and belief, between March 1, 2020, and September 21, 2022, Guglielmo received approximately $105,400.00 in rental income from Park St.

48. That upon information and belief, between September 22, 2022 and the date of this complaint Guglielmo has received additional funds in the approximate amount of $13,600.00.

49. That on Official Form 107, filed with his Chapter 13 Bankruptcy Petition, in response to question number 5, Guglielmo disclosed that he received rental income totaling $46,744.00 in 2020, $77,690.00 in 2021, and an unknown amount in 2022. (Case No.: 22-10461-BAH, Doc. 1, Page 9).

50. That on Official Form 107, filed with his Chapter 13 Bankruptcy Petition, in response to question number 6, Guglielmo disclosed that he had made monthly payments to Select Portfolio Servicing in the total amount of $1,698.75 in the 90 days prior to filing his Bankruptcy Petition. (Case No.: 22-10461-BAH, Doc. 1, Page 10).

51. That on Official Form 107, filed with his Chapter 13 Bankruptcy Petition, in response to questions number 6, Guglielmo disclosed that he had made monthly payments to LoanCare, LLC in the total amount of $4,753.92 in the 90 days prior to filing his Bankruptcy Petition. (Case No.: 22-10461-BAH, Doc. 1, Page 10).

52. That on Official Form 106A/B, filed with his Chapter 13 Bankruptcy Petition, in response to question number 1, Guglielmo disclosed an ownership interest in two (2) parcels of real estate, one is his primary residence located in Concord, NH and the other is Park St. (Case No.: 22-10461-BAH, Doc. 1, Pages 16-17).

53. That on Official Form 106A/B, filed with his Chapter 13 Bankruptcy Petition, Guglielmo indicated that the value of Park St. was One Hundred Eighty Thousand ($180,000.00) dollars. (Case No.: 22-10461-BAH, Doc. 1, Page 17).

54. That on Official Form 106I, filed with his Chapter 13 Bankruptcy Petition, on line 8a Guglielmo disclosed Net monthly income from business, profession, farming, and/or rental receipts of $3,100.00. (Case No.: 22-10461-BAH, Doc. 1, Page 42).

55. That on Official Form 106I, filed with his Chapter 13 Bankruptcy Petition, on line 8h Guglielmo disclosed income attributable to "Rent Northfield Property" in the monthly amount of $3,400.00. (Case No.: 22-10461-BAH, Doc. 1, Page 42).

56. That on Official Form 106J, filed with his Chapter 13 Bankruptcy, on line 4 Guglielmo disclosed that the mortgage payment on his primary residence is $0.00. (Case No.: 22-10461-BAH, Doc. 1, Page 43).

57. That on or about November 30, 2022, Loan Care, LLC ("Loan Care") filed Proof of Claim Number 17, asserting that it had a secured claim consisting of a 1st mortgage against Guglielmo's primary residence, with a monthly payment obligation of $1,602.78. (Case No.: 22-10461-BAH, Claim No. 17).

58. That on Official Form 106J, filed with his Chapter 13 Bankruptcy, on line 5 Guglielmo disclosed that he does not have any monthly payments for second mortgages on his primary residence. (Case No.: 22-10461-BAH, Doc. 1, Page 43).

59. That on or about November 28, 2022, U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for Legacy Mortgage Asset Trust 2021-

SL1 ("US Bank") filed Proof of Claim Number 14, asserting that it had a secured claim consisting of a 2nd mortgage against Guglielmo's primary residence with a monthly payment obligation of $566.25[1]. (Case No.: 22-10461-BAH, Claim 14).

60. That on Official Form 106J, filed with his Chapter 13 Bankruptcy Petition, on line 20a Guglielmo disclosed mortgage payments for additional properties of $2,900.00 per month. (Case No.: 22-10461-BAH, Doc. 1, Page 44).

61. That the monthly mortgage payment including escrow for Park St. as of October 1, 2022 was $2,834.94.

62. That on Official Form 122C-1, filed with his Chapter 13 Bankruptcy Petition, on line 6 Guglielmo disclosed gross rental income averaging $8,600.00 per month in the 6 months prior to filing his Bankruptcy Petition. (Case No.: 22-10461-BAH, Doc. 1, Page 45).

63. That on Official Form 122C-1, filed with his Chapter 13 Bankruptcy Petition, on line 6, Guglielmo disclosed Ordinary and necessary rental operating expenses of $2,100.00 per month in the 6 months prior to filing his Bankruptcy Petition. (Case No.: 22-10461-BAH, Doc. 1, Page 45).

64. That on Official Form 122C-1, filed with his Chapter 13 Bankruptcy Petition, on line 6, Guglielmo disclosed Net income from Rental Property of $6,500.00 per month in the 6 months prior to filing his Bankruptcy Petition. (Case No.: 22-10461-BAH, Doc. 1, Page 45).

65. That Guglielmo filed "Current Monthly Income Details for the Debtor" with his Chapter 13 Bankruptcy Petition which discloses:

    a. Gross rental receipts from his primary residence of $5,200.00 per month in the 6 months prior to filing his Bankruptcy Petition; and
    b. Rental Expenses from his primary residence of $2,100.00 per month in the 6 months prior to filing his Bankruptcy Petition; and
    c. Gross rental receipts from Park St. of $3,400.00 per month in the 6 months prior to filing his Bankruptcy Petition; and
    d. Rental Expenses from Park St. of $0.00 per month in the 6 months prior to filing his Bankruptcy Petition.

    (Case No.: 22-10461-BAH, Doc. 1, Page 49).

66. That the total monthly payment obligation of the 1st and 2nd mortgages on Guglielmo's primary residence is $2,169.03.

67. That upon information and belief based upon the information contained in Guglielmo's sworn schedules and statements the expense disclosed on line 20a of Official Form 106J is the loan payment for Park St.

---

[1] Pursuant to the documents attached to US Bank's Proof of Claim this loan has matured since the time Guglielmo's Bankruptcy Case was filed such that there is no longer a monthly payment obligation. However, as of the date of the bankruptcy filing the loan had not yet matured and the monthly payment obligation was $566.25.

68. That on or about September 21, 2022, Guglielmo filed a Chapter 13 Plan of Reorganization, and indicated in Paragraph 13 that he intended to enter a consensual loan modification with Nationstar regarding the severely delinquent loan on Park St. (Case No.: 22-10461-BAH, Doc. No. 7, Page 6).

69. That on or about December 2, 2022, Guglielmo Amended his Schedules I & J, and in response to question number 13 provided, that:

    The Debtor's budget now takes into account that the Northfield property will be going to foreclosure and the rent will end. The Debtor currently receives $3,400.00 per month in rent for that property and pays about $666.00 in expenses. (Case No.: 22-10461-BAH, Doc. No. 23-2, Page 2).

70. That Official Form 106I, as amended on December 2, 2022, on line 8h continues to disclose monthly rental income totaling $3,400.00 for Park St. (Case No.: 22-10461-BAH, Doc. No. 23-2, Page 2).

71. That Official Form 106J, as amended on December 2, 2022, on line 20a continues to include a mortgage expense for other properties in the monthly amount of $2,900.00. (Case No.: 22-10461-BAH, Doc. No. 23-2, Page 4).

72. That on or about January 17, 2022, Guglielmo filed an Amended Chapter 13 Plan, which purports to reject the four (4) tenants' leases and continues to indicate in Paragraph 13 that he intends to enter a consensual loan modification with Nationstar regarding the severely delinquent loan on Park St. (Case No.: 22-10461-BAH, Doc. No. 33, Page 6).

73. That as of January 18, 2022, Guglielmo had not made any post-petition payments to Mr. Cooper for the mortgage on Park St.

74. That as of January 18, 2022, the amount of payment arrearages owed to Mr. Cooper has increased to $97,135.07.

75. That as of January 18, 2022, the total amount necessary to bring the mortgage payments due to Mr. Cooper was $100,196.76.

## Count I
## Dischargeability of Debt pursuant to 11 U.S.C. §523(a)(4)

76. That the Plaintiff repeats and incorporates the allegations contained in paragraphs 1 through 73 above.

77. That 11 U.S.C. §523(a)(4) provides that:

    A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

    * * * * * * *

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

78. That 11 U.S.C. §1328(a) provides in relevant part that:

    Subject to subsection (d), as soon as practicable after completion by the debtor of all payment under the plan, …the court shall grant the debtor a discharge of all debts…except any debt –

    * * * * * * *

    (2) of the kind specified in section 507(a)(8)(C), or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);

79. That a debt arising from "fraud or defalcation while acting in a fiduciary capacity" requires a showing that:

    a. [T]he debt must result from fiduciary's defalcation under an 'express or technical trust';
    b. [t]he debtor must have acted in a fiduciary capacity with respect to the trust; and
    c. The transaction in question must be a 'defalcation' within the meaning of bankruptcy law. Fahey v. Fahey, 482 BR 678, 687 (BAP 1st Cir., 2012), citing Chao v. Duncan, 331 BR 70, 77 (Bankr. E.D.N.Y, 2005).

80. That the Bankruptcy Code does not define "embezzlement".

81. That the First Circuit has held that the lack of a definition of "embezzlement" indicates Congress' intent for "embezzlement" to be analogous to the common law definition of embezzlement. *Sherman v. Igor Potapov (In re Sherman)*, 603 F. 3rd 11, 13 (1st Cir., 2010).

82. "Embezzlement is 'the fraudulent conversion of the property of another who is already in lawful possession of it'." *Id.* citing *United States v. Young*, 955 F.2d 99, 102 (1st Cir. 1992).

83. The use of property by an individual with authority to possess the property in an unauthorized manner, where the perpetrator knew the use was unauthorized constitutes embezzlement. *Sherman*, 603 F.3rd at 13.

84. That Guglielmo has received all rental payments made since at least March 1, 2020 from all tenants at Park St.

85. That pursuant to the 2009 Agreement the rents collected from Park St. were to be used to pay the mortgage.

86. That the mortgage has not been paid from any source since February 14, 2020.

87. That Guglielmo's Official Bankruptcy Schedules and Statements indicate that Park St. will be foreclosed; however, he is still indicating that he receives rental income and intends to pay the mortgage. Furthermore, his Chapter 13 Plan continues to assert that he intends to modify the mortgage.

88. That pursuant to the 2009 Agreement, any net profits, after payment of the mortgage and necessary expenses, were to be jointly owned by Guglielmo and Hantschar.

89. That it is likely a foreclosure of Park St. will result in a deficiency as the stated value is substantially less then the outstanding amount owed to Mr. Cooper.

90. That even if the value of Park St. remains stable until the Foreclosure, the balance owed to Mr. Cooper will continue to increase until such time as the property is sold at foreclosure, unless the mortgage payments are being made.

91. That because Guglielmo is not an obligor on the loan he will not be liable for any eventual deficiency balance.

92. That until such time as the mortgage is foreclosed, the extent of Guglielmo's embezzlement cannot be determined.

### V. Relief Requested

93. That the Plaintiff repeats and incorporates the allegations contained in paragraphs 1 – 92 above.

94. That this Honorable Court should find that Guglielmo converted the rental income received from the Park St. tenants when he failed to use the rental income to make the monthly mortgage payments to Mr. Cooper.

95. That this Honorable Court should find that such conversion was fraudulent based upon the 2009 Agreement to pay the monthly mortgage payments from the rents collected from Park St.

96. That this Honorable Court should find that a portion of Guglielmo's debt owed to Snarksi is non-dischargeable pursuant to 11 U.S.C. §523(a)(4).

97. That this Honorable Court should find that the amount of the debt Guglielmo owes to Snarksi that constitutes embezzlement consists of the lesser amount of all rents collected from Park St. tenants after February 1, 2020 or any deficiency balance after foreclosure owed on the loan.

**WHEREFORE** the Plaintiff Respectfully Requests that this Honorable Court:

A. Find that Guglielmo converted rental income received from Park Street tenants received after February 1, 2020;

B. Find that Guglielmo's conversion of the rental income received from Park Street tenants after February 1, 2020 was fraudulent; and

C. Find that Guglielmo's debt to Snarksi is non-dischargeable pursuant to 11 U.S.C. §523(a)(4) in the lesser amount of either the total amount of rents collected after February 1, 2020 or the amount of an eventual deficiency balance existing after foreclosure; and

D. For such other and further relief as may be deemed fair, just and equitable.

Respectfully submitted,
Christina Snarski

                                                  By and through her Attorney

Dated:  January 27, 2023                                   /s/ Kathleen E. McKenzie
                                                              Kathleen E. McKenzie, Esq.
                                                              BNH 07628
                                                              Raymond J. DiLucci, P.A.
                                                              81 South State Street
                                                              Concord, NH  03301-3521
                                                              Tel: (603) 224-2100